UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                                    Case No. 26-mj-30202

v.

Nicholas Krandall Wilson, Jr.,

       Defendant.

_____/

**United States' Response in Opposition to**
**Defendant's Motion for Temporary Release (ECF No. 16)**

The death of Nicholas Wilson's fifteen-year-old brother is a profound

tragedy, especially by gun violence. That loss is made all the more painful by the

fact that Wilson's own mother was recently struck by gunfire when suspected gang

rivals shot up the family's residence. The United States does not minimize

Wilson's grief or his desire to be present with his family during this difficult time.

But grief does not alter the calculus of danger. On April 27, 2026, the Court

ordered Wilson detained after a contested hearing, having considered his record in

full and found by clear and convincing evidence that no condition or combination

of conditions can reasonably assure the safety of any other person and the

community. (ECF No. 17). Physical release — even briefly and for the limited

purpose of attending his brother's funeral — would pose serious and concrete risks

1

to the public, to law enforcement, and potentially to Wilson himself. Those risks are not justified, and the motion should be denied.

The undersigned has confirmed with the Marshals Service that virtual viewing from the detention facility via Zoom is feasible, subject to its security protocols and provided Wilson's family and defense counsel arrange and supply the necessary access link. Should that accommodation be arranged, Wilson could observe the services and remain connected to his family without requiring his physical release into the community.

## Discussion

### I.    Standard of Review

Although his motion invokes 18 U.S.C. § 3145(b), Wilson did not submit it to the presiding district judge — "the court having original jurisdiction over the offense" — as that provision requires. Nonetheless, given the nature of the relief Wilson seeks, the United States construes the motion as arising under 18 U.S.C. § 3142(i), the provision governing temporary release of a detained defendant, which a magistrate judge can entertain. That section states:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142(i).

"The defendant has the burden of establishing circumstances warranting temporary release pursuant to § 3142(i)." *United States v. Bothra,* No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020). "There is limited authority addressing what constitutes a compelling reason supporting temporary release." *United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020). Courts have typically granted relief under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *Id.*

**II.     Physical Release, Even Temporary, Is Not Warranted, When Weighed Against Wilson's Dangerousness.**

    **A.     Wilson's conduct toward law enforcement has been consistently and dangerously reckless.**

As this Court heard and recognized at the detention hearing, Wilson has fled from law enforcement on multiple occasions, each time placing the public and officers in serious danger.

On June 20, 2025, he jumped out of a moving U-Haul, leaving behind an intoxicated passenger, to flee a routine traffic stop. He then fled on foot while armed with a fully automatic weapon loaded with 50 rounds, which he discarded in a public area where anyone could have retrieved it. A month later, when officers discovered a firearm on his person at a block party, he again attempted to flee, though unsuccessfully.

3

Then on April 17, 2026, his flight from officers turned fatal. Within just a city block, Wilson accelerated to an estimated 80 miles per hour before losing control and crashing into another vehicle, killing its driver: a legal immigrant and father of four who was in the process of petitioning for asylum for his children to come to the United States. Wilson, himself injured in the crash, abandoned his girlfriend inside the wrecked vehicle and fled on foot while carrying two firearms. During the pursuit, he repeatedly reached for those firearms before ultimately drawing one and pointing it at pursuing officers, who were forced to return fire.

Notably, Wilson's disregard for law enforcement supervision did not end with his arrest. While hospitalized following the April 17 shooting and under active law enforcement watch, Wilson twice obtained unauthorized access to hospital phones without the knowledge or authorization of supervising officers.

Ultimately, this is a defendant who has demonstrated, repeatedly and in escalating fashion, that he will circumvent law enforcement supervision whenever given the opportunity — whether by flight, by force, or by other means — and that people get hurt when he does. Temporary release would require transporting Wilson through public spaces under law enforcement escort, precisely the kind of setting in which he has chosen, again and again, to flee, obstruct, and endanger.

**B.      Physical release would expose Wilson, law enforcement, and the public to serious and foreseeable danger.**

The record before the Court also makes clear that releasing Wilson, even temporarily, would place him, law enforcement, and the public in serious danger rooted in the violent environment in which Wilson has been deeply immersed.

In January 2026, Wilson's residence was shot up and his mother was struck in the face. That attack is believed to have been carried out in retaliation for the death of a rival gang member's family member in which Wilson is believed to have been involved. Violence of this nature has permeated this defendant's environment.

Zhyon Wilson, the defendant's younger brother whose funeral is the subject of this motion, was killed in a shootout in which the other party also died — an episode likewise believed to be rooted in the same volatile environment. It did not go unanswered: on April 12, the day of Zhyon's death, a shooting occurred that investigators believe was carried out in retaliation against a person connected to his murder. A residence occupied by an uninvolved victim was caught in the crossfire.

The firearms recovered in this case place Wilson at the center of this conflict. One of the guns found on his person on April 17 was NIBIN-linked to that retaliatory shooting, and an image on Wilson's phone dated April 5 shows him in possession of a gun of similar appearance, placing that weapon in his hands days before the shooting occurred. Another firearm, one of the crime guns tossed to a neighboring yard by fleeing occupants of the Birchwood residence where Wilson

5

had been seen before the shooting, was independently linked to that same shooting — and, separately, to a homicide committed less than two months prior. The picture that emerges is not of a man on the periphery of gun violence in the communities, but one of its architects.

Transporting Wilson to funeral services attended by individuals from that same environment, in the communities where this violence continues to echo, would expose Wilson, the Marshals Service officers responsible for his supervision, and the public to dangers that are neither remote nor speculative, but grounded in a pattern the Court has already found sufficient to order detention.

### C.    Physical release is not justified where a potential virtual alternative exists.

The United States recognizes that no virtual accommodation can fully replicate the experience of being present with one's family in a moment of grief. But the question before this Court is not whether virtual attendance is a perfect substitute — it is whether Wilson's interests can be meaningfully addressed without endangering the public. The undersigned has confirmed with the Marshals Service, which shares the United States's assessment as to Wilson's request, that virtual viewing from the detention facility via Zoom may be feasible, provided Wilson's family and defense counsel arrange the necessary access. (*See* Ex. 1).

The United States has no reason to doubt that Wilson's grief is real and recognizable. But so is the danger that physical release would create, and that

danger is well-documented and concrete. A virtual accommodation, if it can be arranged, honors the former without risking the latter.

## Conclusion

For these reasons, the Court should deny Wilson's motion. Should the Court nonetheless be inclined to grant some accommodation, the United States has confirmed with the Marshals Service that virtual attendance via Zoom may be feasible, subject to its security protocols, provided defense counsel arrange the necessary access. The United States suggests that defense counsel coordinate directly with the Marshals Service to explore that option.

Respectfully submitted,

JEROME F. GORGON, Jr.
United States Attorney

/s/ Nhan Ho
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48236
313-226-9632
Nhan.ho@usdoj.gov

Date:  April 29, 2026

7

**Certificate of Service**

I certify that on April 29, 2026, I electronically filed this document with the Clerk of the Court of the Eastern District of Michigan using the ECF filing system, which will send notification to all counsel of record.

*s/Nhan Ho*
Nhan Ho
Assistant United States Attorney